IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHERRY LYNN PHELPS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 13-5338 |
| CAROLYN W. COLVIN, | : | |
| | : | |
| Acting Commissioner of | : | |
| Social Security. | : | |

**REPORT AND RECOMMENDATION**

**MARILYN HEFFLEY, U.S.M.J.**                                    **November 30, 2015**

Sherry Lynn Phelps ("Phelps" or "Plaintiff"), pursuant to 42 U.S.C. § 405(g), seeks

review of the Commissioner of Social Security's ("Commissioner" or "Defendant") decision

denying her claim for disability insurance benefits ("DIB") and supplemental security income

("SSI").  For the reasons that follow, I recommend that Plaintiff's Request for Review be denied.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Phelps was born on March 9, 1968.  R. at 109.[1]  She was educated through the ninth

grade and previously worked as a stock person and cashier.  Id. at 49, 105.  Phelps alleges

disability beginning on June 6, 2007 due to back disorders and diabetes.  Pl.'s Br. (Doc. No. 12)

at 1.

Phelps protectively filed applications for DIB and SSI benefits under Title II and Title

XVI of the Social Security Act (the "Act"), respectively, on April 13, 2009.  R. at 109.  These

---

[1]     Citations to the administrative record will be indicated by "R." followed by the page number.

applications were initially denied on June 17, 2009.  Id. at 132.  Phelps then filed a timely

request for a hearing on July 9, 2009.  Id.  The hearing was held on May 5, 2010 before an

Administrative Law Judge ("ALJ").  Id. at 92.   By decision dated May 25, 2010 (the "first

decision"), the ALJ found that Phelps was not disabled.  Id. at 110.  Phelps filed a timely appeal

with the Appeals Council and also filed a second set of applications for DIB and SSI benefits on

June 13 and 14, 2010, respectively.  Id. at 124-25.  On April 12, 2011, the Appeals Council

reversed and remanded the matter to the ALJ with directions to further evaluate Phelps's claims.[2]

Id. at 128.

        A second hearing was convened before the ALJ on September 23, 2011.  Id. at 94.  By

decision dated December 28, 2011 (the "second decision"), the ALJ found that Phelps was not

disabled.   Id. at 20-36.  Phelps filed a timely appeal with the Appeals Council, which affirmed

the second decision of the ALJ and  denied Phelps's request for review on July 26, 2013, thereby

affirming the decision of the ALJ as the final decision of the Commissioner.  Id. at 1.  Phelps

then commenced this action in federal court.

## II.        LEGAL STANDARD

        The role of the court in reviewing an administrative decision denying benefits in a social

security matter is to uphold any factual determination made by the ALJ that is supported by

"substantial evidence."   42 U.S.C. § 405(g); Richard v. Perales, 402 U.S. 389, 401 (1971); Doak

v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir.

1985).  A reviewing court may not undertake a de novo review of the Commissioner's decision

---

[2]     The Appeals Council determined that its adjudication of Phelps's first set of claims rendered
the new set of claims duplicates and instructed that upon remand, the ALJ should address all
claims together.  R. at 129.

in order to reweigh the evidence.  <u>Monsour Medical Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986).  The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's finding of fact."  <u>Schwartz v. Halter</u>, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 406 (3d Cir. 1979).  "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999) (quoting <u>Pierce v. Underwood</u>, 487 U.S. 552, 564-65 (1988)).  The court's review is plenary as to the ALJ's application of legal standards.  <u>Krysztoforski v. Chater</u>, 55 F. 3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period.   42 U.S.C. § 423(d)(1).   As explained in the applicable  agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial  gainful activity, we will find that you are not disabled.  (ii) At the second step, we  consider the medical severity of your impairment(s).  If you do not have a severe  medically determinable physical or mental impairment that meets the duration  requirements in § 404.1509, or a combination of impairments that is severe and meets the  duration requirement, we will find that you are not disabled.  (iii) At the third step, we  also consider the medical severity of your impairment(s).  If you have an impairment(s)  that meets or equals one of our listings in appendix 1 of this subpart and meets the  duration requirement, we will find that you are disabled.  (iv) At the fourth step, we  consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v) At the fifth

and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work.  If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

## III.   <u>THE ALJ DECISION</u>

In his second decision, which is the subject of this Court's review, the ALJ found that Phelps suffered from the following severe impairments: diabetes mellitus, back disorders, joint disorders, obesity, and mood disorders.  R. at 26.  The ALJ did not find that any impairment, or combination of impairments, met or medically equaled a listed impairment.  <u>Id.</u>  The ALJ determined that Phelps had the residual functional capacity ("RFC") to perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with standing/walking limited to 2 hours and sitting to about six hours per 8-hour workday and no detailed instructions."  <u>Id.</u> at 27.  Relying upon the testimony of the vocational expert ("VE") who appeared at the hearing, the ALJ concluded that Phelps was unable to perform past relevant work, but that there were other jobs that existed in significant numbers in the national economy that Phelps was capable of performing, such as a packer, sorter or inspector.  <u>Id.</u> at 21.

## IV.   <u>PHELPS'S REQUEST FOR REVIEW</u>

In her Request for Review, Phelps argues that she should have been found disabled and contends that the ALJ erred by: (1) failing to consider the medical evidence and opinions of her treating physician, Dr. Matthew Vegari, and instead relying on the medical opinions of non-treating consultative examiners; and (2) failing to account for her carpal tunnel syndrome, need for naps and mental impairments when making his RFC determination and in the hypothetical questions posed to the VE.  Pl.'s Br. at 2-3.

4

V.    **DISCUSSION**

    A.  **The ALJ Did Not Err in Evaluating the Opinions of Phelps's Treating Physician and the Non-Treating Consultative Examiners**

        Phelps maintains that the ALJ erred in evaluating the medical evidence presented by her treating physician, Dr. Vegari, in three ways.  First, she claims that the ALJ improperly afforded "significant weight" to the opinion evidence of a non-treating medical examiner, over the opinion of  Dr. Vegari.  Pl.'s Br. at 7-10.  Second, Phelps contends that had the ALJ considered the medical evidence submitted by Dr. Vegari, namely an April 30, 2010 Spinal Nerve Route Compression form, she would have been deemed disabled under Listing 1.04A.  Id. at 10-11.  Finally, Phelps alleges the ALJ failed to account for Dr. Vegari's opinion that her limitations as to "pushing and pulling" rendered her "totally disabled."  Id. at 10.[3]  The Commissioner disagrees with Phelps's position, arguing that substantial evidence supports the ALJ's evaluation of Dr. Vegari's opinions in each of these scenarios.  Def.'s Br. (Doc. No. 15) at 7-8.  For the reasons that follow, I agree with the Commissioner.

        1.  **The ALJ Did Not Err in His Evaluation of the Opinions of Non-Treating Physicians, Dr. James Vizza and Dr. Anne Zayden**

        Phelps alleges that the ALJ improperly afforded "significant weight" to the opinion evidence of a non-treating state agency medical examiner, even though that opinion was contrary to the opinion of her treating physician, Dr. Vegari.  Pl.'s Br. at 7-10.  This argument appears to

---

[3]    It should be noted that the entirety of Phelps's argument on this issue appears to have been copied directly from her brief to the Appeals Council on October 12, 2010 requesting review of the ALJ's first decision dated May 25, 2010.  As stated previously, the first decision was subsequently vacated by the Appeals Council and remanded to the ALJ for a new hearing on April 12, 2011 and the ALJ's second decision issued December 28, 2011 in response to the Appeals Council's remand, is the subject of this Court's review.  See 20 CFR § 404.977; § 416.1477.  As such, this Court will give due consideration to Plaintiff's arguments to the extent they relate to the ALJ's second decision.

be a remnant of Plaintiff's brief in response to the ALJ's first decision as it contains argument relating to a Physical Residual Functional Capacity Assessment performed by non-treating examiner, Dr. Sharon A. Wander, which is not referenced or relied upon by the ALJ in his second decision.  See Pl.'s Br. at 12 (quoting the ALJ's first decision dated May 25, 2010 at R. 119).  Relevant to this Court's review, the ALJ's second decision evaluates the opinions of two other state agency medical consultants, namely psychological consultant, James Vizza, PsyD, and medical consultant, Dr. Anne Zayden.

Under applicable regulations and controlling case law, factors to be considered by the ALJ in assigning appropriate weight to a medical opinion include the following: the length of the treating relationship and frequency of examination; the nature and extent of the treating relationship; supportability; consistency; specialization; and other relevant factors.  20 C.F.R. § 416.927(c)(1)-(6).  In rejecting a physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion."  Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (quotations omitted).  Furthermore, the ALJ must explain on the record his or her reasons for disregarding a physician's opinion.  Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986).  It cannot be for "no reason or for the wrong reason."  Morales, 225 F.3d at 317 (quotations omitted).  However, an ALJ is required to conduct an independent analysis of the relevant evidence.  20 C.F.R. §§ 404.1545, 416.945.  As the Court of Appeals for the Third Circuit has articulated:

> Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir.2011).  State agent opinions merit significant consideration as well.  See SSR 96–6p ("Because State agency medical and

> psychological consultants . . . are experts in the Social Security disability programs, ... 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s). . . .").

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).

With respect to Phelps's mental assessment, state agency psychological consultant, Dr. Vizza, concluded that "claimant's mental symptomatology is no more than mildly to moderately interfering with claimant's activities of daily living, and no more than moderately interfering with claimant's social functioning and ability to maintain concentration, persistence or pace."  R. at 26.  This Court finds no error in the ALJ's treatment of Dr. Vizza's opinion as it was corroborated by treating source opinions and is wholly supported by the record in this case.  See Irelan v. Barnhart, 82 F. App'x 66, 71 (3d Cir. 2003) (outlining the factors used in weighing the medical opinion of a non-treating source which include "the supportability of the opinion" and "the consistency of the opinion with the record as a whole").  Here, the ALJ found Dr. Vizza's opinion to be consistent with the evidence of record that Plaintiff "has never been evaluated or diagnosed by a mental health specialist; she has never had emergent, inpatient or partial hospitalization, nor participated in outpatient therapy."  R. at 33.  Furthermore, the ALJ determined that Dr. Vizza's assessment was consistent with the medical evaluations of Phelps's two primary care physicians, "Drs. Vegari and Sunday [who] record normal mental status, intact memory, euthymic mood and normal affect."  Id.  Accordingly, the ALJ did not err in affording weight to Dr. Vizza's opinion.

The other non-treating medical opinion cited by the ALJ is that of State agency medical consultant, Dr. Anne Zayden, whose opinion the ALJ "afforded little weight as the undersigned finds the more stringent limitations identified in the residual functional capacity assessment to be more consistent with the claimant's credible subjective complaints and the objective evidence of

record (Exhibit 55F)."  Id. at 33.  It is well-settled that an ALJ is free to reject any medical

opinion to the extent that opinion is not supported by evidence in the record.  See Kertesz v.

Crescent Hills Coal Co., 788 F.2d 158, 163 (3d Cir. 1986).  Therefore, this Court finds no error

in the ALJ's rejection of Dr. Zayden's medical opinion.

### 2.  The ALJ's Finding that Claimant Did Not Meet Listing 1.04A is Supported By Substantial Evidence

Next, Plaintiff argues that the ALJ erred in finding that she did not suffer from an

impairment that met or equaled Listing 1.04A.  Pl.'s Br. at 11.  She specifically relies upon Dr.

Vegari's Spinal Nerve Route Compression form to support her contention that she suffers from

multiple impairments that qualify her for such a listing, and that the ALJ failed to take Dr.

Vegari's form into account when finding she was not disabled.  Id. (citing R. at 999).  The

Commissioner disagrees and contends that substantial evidence supports the ALJ's evaluation of

Dr. Vegari's opinion and the ALJ's finding that Phelps does not qualify for a listing under

Section 1.04A.  For the reasons that follow, I agree with the Commissioner.

At step three of the sequential evaluation process, an ALJ must determine whether the

claimant's impairment, matches or is equivalent to, a listed impairment.  Burnett v. Comm'r of

Social Sec. Admin., 220 F.3d 112 119 (3d Cir. 2000).  To meet the requirements of a listing, the

alleged impairment must satisfy "all of the specified medical criteria."  Jones v. Barnhart, 364

F.3d 501, 504 (3d Cir. 2004).  "An impairment that manifests only some of th[e] criteria, no

matter how severely, does not qualify."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  The

claimant bears the burden of proof at step three of the sequential evaluation process.  Brown v.

Bowen, 845 F.2d 1211, 1213-14 (3d Cir. 1988).

Furthermore, when deciding whether a claimant has met his or her burden at step three,

an ALJ must clearly set forth the reasons for his or her decision.  Burnett, 220 F.3d at 119.

While mere conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are deemed insufficient, the Third Circuit has held that an ALJ need not employ "particular 'magic' words . . . particular language or adhere to a particular format" when conducting his or her analysis.  Diaz v. Comm'r of Social Sec. Admin., 577 F.3d 500, 504 (3d Cir. 2009) (citing Jones, 364 F.3d at 505).  The ALJ need only provide a "discussion of the evidence" and an "explanation of reasoning" for his or her conclusion sufficient to enable meaningful judicial review.  Burnett, 220 F.3d at 120.

Here, the ALJ concluded that Phelps "does not have an impairment that medically equals the requirements of any listed impairment including §§ 1.02, 1.04, and 9.08."  R. at 26.  In addressing why Phelps did not suffer from an impairment that met or equaled Listing 1.04A, the ALJ explained:

> Dr. Vegari did submit a Spinal Nerve Root Compression form identifying his diagnoses and findings as compared with listing § 1.0[4]A.  He acknowledges that the claimant does not have motor loss (atrophy with associated muscle weakness or muscle weakness).  Specifically, he does not indicate that claimant's impairments result in atrophy or inability to heel walk, toe walk, squat and/or arise from squatting position.  This is consistent with his treatment notes that record motor strength at 5/5 throughout and independent ambulation without the need of an assistive device.

Id. at 33.  In this case, Dr. Vegari's assessment supported the ALJ's finding that Phelps did not meet all of the requirements of Listing 1.04A by confirming that she did not exhibit motor loss, which is required if a claimant is to be considered pursuant to Listing 1.04A.  See Sullivan, 493 U.S. at 529.

Moreover, the ALJ cited to corroborating notes and reports from Phelps's other primary care physician, Dr. Sunday, reports of Phelps's treating physical therapists, as well as Phelps's own testimony in determining that she did not have motor loss that would qualify her for the Section 1.04A listing.  R. at 30-32.  For example, in support of his RFC finding, the ALJ noted

9

that "[i]n March 2010, claimant reported improved functionality and she was able to do yard

work.  She was washing dishes and reported being able to reach the second shelf holding two

dishes in March 2010."  Id. at 32.  The ALJ also referenced corroborating testimony from

Phelps's physical therapist that on March 31, 2010, "[Phelps] has made good progress to increase

and stretch for functional use of left upper extremity . . . [and] reports 70-80% functional use of

the left upper extremity.  Passive and active ranges of motion are within full limits and full

overhead reach.  We expect further progress with home exercise program and patient is in

agreement with discharge with home exercise program."  Id. (citing Ex. 43F).  For these reasons,

the ALJ's findings at step three were supported by substantial evidence and Phelps's arguments

to the contrary lack merit.

### 3. The ALJ's RFC Determination as to Pushing and Pulling was Supported by Substantial Evidence

Plaintiff's third argument is that the ALJ's RFC assessment placed no restriction on her

reaching ability, "despite Dr. Vegari's clear indication that [Phelps] should avoid pushing and

pulling type activities."  Pl.'s Br. at 10 (citing Exhibits 1F, 4E).  As articulated below, this

argument is unpersuasive and consequently, I find that the ALJ's RFC determination was

supported by substantial evidence.

An RFC assessment is not a medical assessment, but an administrative finding reserved

to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e) (2006); SSR 96–5p, 1996 WL

374183 (July 2, 1996).  In making an RFC assessment, an ALJ is required to conduct an

independent analysis of the relevant evidence and develop an appropriate RFC based upon the

record.  20 C.F.R. §§ 404.1545, 416.945.  It is the ALJ, "not the treating or examining physicians

or State agency consultants [who] must make the ultimate disability and RFC determinations."

Chandler, 667 F.3d at 361.  In doing so, however, an ALJ must explain the weight given to

physician and psychologist opinions.  See 20 C.F.R. § 404.1527(e)(2)(ii).  The ALJ's RFC

assessment must "be accompanied by a clear and satisfactory explanation of the basis on which it

rests."  Cotter, 642 F.2d at 704; Fargnoli, 247 F.3d at 41.  The ALJ must also give some

indication of the evidence which he or she rejects and the reason for discounting it.  Burnett v.

Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000); see also SSR 96–8p, 1996 WL 374184

(July 2, 1996).  "In the absence of such an indication, the reviewing court cannot tell if

significant probative evidence was not credited or simply ignored."  Cotter, 642 F.2d at 705.

     Here, in evaluating Phelps's pushing and pulling limitations, the ALJ adequately

explained his reasons for giving Dr. Vegari's opinion limited weight.  First, he observed that

"[a]t each visit in 2007, Dr. Vegari described claimant as temporarily totally disabled with a

maximum lifting limit of five pounds" with the additional requirement that she avoid pushing

and pulling type activities.  R. at 28.  However, the ALJ noted that following the administration

of lumbar injections by Dr. Vegari, Plaintiff's "pain levels decreas[ed] from 9 on a scale of 0 to

10, to 2 and 3 out of 10."  Id.  He further explained that "[i]n September 2007, Dr. Vegari stated

that injections helped considerably and low back pain and spasms had improved dramatically."

Id.  By December 2007, Phelps was doing "much better" but still had upper back pain.  Id.  The

ALJ also found that Plaintiff's neck and lower back pain were significantly improved with

injections and Dr. Vegari "anticipated claimant would be released to light duty at the next visit

(Exhibit 9F)."  Id.  The ALJ observed that Dr. Vegari did not treat Phelps again until one year

later in December 2008 "when [Phelps] reinjured herself while raking leaves outside her home."

Id. at 33.  Phelps's new injury was accompanied by "severe left shoulder and neck pain,"

prompting Dr. Vegari to "add[] the diagnosis of supraspinatus, infraspinatus" and

"recommend[] continued conservative therapy for a suspected rotator cuff tear," which the ALJ

determined was subsequently ruled out by multiple MRIs.  Id. at 29.

Phelps contends that Dr. Vegari's subsequent assessment of her injuries and conclusion

in April 2009 that she "remains totally disabled" was ignored by the ALJ.  Pl.'s Br. at 11.

Phelps is incorrect.  Not only did the ALJ address Dr. Vegari's conclusion, but he also

explained why such a conclusion was not dispositive of Phelps's case.  He stated:

> [Dr. Vegari] completed two employability assessments in December 2008 and
> April 2009.  On both forms, he identified a *temporary* disability, *anticipated to
> last less than 12 months* each.  The combined periods of disability identified by
> [Dr. Vegari] totaled 4 months, from December 2, 2008 through April 13, 2009
> (Exhibit 8F). . . .  Additionally, while the doctor continued to identify restrictions
> on lifting more than five pounds and avoiding pushing and pulling activities
> through August 2009, he did not include these limitations at claimant's next
> follow up visit on January 13, 2010 (Exhibit 9).  There are no further
> employability assessments after April 2009, indicating that Dr. Vegari believed
> claimant's alleged temporary disability had continued.

R. at 33.

Against this backdrop, it is clear that the ALJ was entitled to give limited weight to Dr.

Vegari's opinion of temporary disability in determining whether Phelps was disabled for the

purposes of the Act, and that substantial evidence supports his decision to do so.  First,

disability under the Act requires the inability to engage in substantial gainful activity by reason

of an impairment "which can be expected to last for a continuous period of at least twelve

months," (42 U.S.C. §1382c (a) (3) (A) (emphasis added)), not for a "temporary" period of

time.  In this case, the ALJ found that beyond the employability assessments, Dr. Vegari "had

not provided a function-by-function assessment or opined that claimant was disabled for a

period of 12 months or more" at the time of his decision.  R. at 30.

Moreover, even if Dr. Vegari's opinion related to a period of time greater than 12

months, statements of opinion on the ultimate issue of disability—even those from a treating

12

physician—are not binding on the ALJ because disabled status is a decision reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c); see also Chandler, 667 F.3d 356 at 361.  Thus, the ALJ was free to reject Dr. Vegari's conclusions regarding Phelps's pushing and pulling capabilities, as long as he adequately explained in the record his reasons for doing so.  Here, the ALJ provided such reasons, including notes from Dr. Vegari himself; Phelps's other primary care physician, Dr. Sunday; her physical therapists; and Phelps's own testimony. R. at 30-33.  For all of the foregoing reasons, I find that the ALJ's determination that Dr. Vegari's temporary pushing and pulling restrictions were not necessarily work-preclusive limitations was supported by substantial evidence.

**B.    The ALJ's RFC Assessment and VE Hypothetical Questions are Supported by Substantial Evidence**

Phelps also contends that the ALJ erred by failing to properly account for her carpal tunnel syndrome, her need for naps and her mental impairments when making his RFC determination and in the hypothetical questions he posed to the VE.  Pl.'s Br. at 4.  She asserts that had these symptoms been considered, she would have been completely precluded from any of the sedentary jobs identified by the VE.  Id.  The Commissioner disagrees and maintains that substantial evidence supports the ALJ's decision to dismiss each of these symptoms as irrelevant to his RFC analysis.  Def.'s Br. at 5-6.  I agree with the Commissioner.

While a hypothetical question posed to a VE must accurately convey all credibly established impairments and limitations for consideration, it need not include every single limitation alleged.  Rutherford v. Barnhart, 399 F.3d 546, 553-54 (3d Cir. 2003); see also Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999).  Limitations that are asserted by the claimant but otherwise lack "objective medical support" can be rejected by the ALJ for inclusion in the hypothetical question "if there is conflicting evidence in the record."  Rutherford, 399 F.3d

at 554.  Furthermore, the ALJ does not need to accept the testimony of a VE where that testimony is based on subjective complaints that the ALJ deems non-credible.  Craigie v. Bowen, 835 F.2d 56, 57-58 (3d Cir. 1987).

### 1.  The ALJ Did Not Err in Evaluating Phelps's Carpal Tunnel Syndrome

Plaintiff claims that if her carpal tunnel syndrome, for which she "has in the past required surgical intervention," was accounted for in the hypothetical question as a limitation, she would have been unable to perform the sedentary jobs identified by the VE.  Pl.'s Br. at 4-5.  In fact, the ALJ did account for Phelps's medical history associated with carpal tunnel syndrome in his hypothetical question by asking the VE to assume, "in addition to the above limitations, the vocational impact of *limited dexterity*" on available occupations.  R. at 35, 57 (emphasis added).  In response, the VE stated that "it depends upon how much the limitations are."  The VE further explained, "[I]if it's something that she cannot do . . . at all, of course it would preclude them.  Minimal—I mean limit—some limitations would not preclude them."  Id. at 58.

Phelps insists that the ALJ erred by determining that she had only "minimal" or "some limitation" as a result of her carpal tunnel syndrome, when she should have been completely precluded from work due to the seriousness of her disability that "in the past required surgical intervention."  Pl.'s Br. at 5.  However, as the ALJ stated in his decision, he did not find any foundation in the evidentiary record for such a limitation.  See R. at 29, 31.  His finding, which is supported by substantial evidence, was that Phelps only suffered from a limited impairment of strength and motion due to her carpal tunnel syndrome.  Id.  Although a hypothetical question to a VE must accurately portray the claimant's physical and mental impairments, it need only reflect those impairments that are supported by the record.  See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  While the VE's response to the ALJ's hypothetical question regarding

14

Phelps's carpal tunnel syndrome encompassed a range of outcomes, including the result for an individual who was completely limited by the condition, the ALJ did not ultimately find that such a limitation existed for Phelps.  Thus, the ALJ was not required to include it in making his RFC determination.  See Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) ("[W]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." (citing Podedworny v. Harris, 745 F.2d 210, 318 (3d Cir. 1984))).

### 2.   The ALJ Did Not Err in Evaluating Phelps's Claim of Needing Naps

Next, Plaintiff claims that her need to take naps, which was "associated with the strong narcotic pain medications that she was taking[,]" was addressed by the VE who opined that such a limitation would render her "unemployable."  Pl.'s Br. at 5, 6.  She argues that the ALJ's failure to include this limitation in his RFC assessment was in error.  Id.  Plaintiff's contention, however, is meritless.  As discussed above, although an ALJ may proffer a variety of assumptions to the VE, the ALJ is only required to incorporate the VE's responses into his RFC assessment to the extent they "actually portray[] the claimant's individual physical and mental impairments."  Podedworny, 745 F.2d at 318.

Here, while the VE did testify that an individual would be precluded from all work if she needed naps "through the course of the day," the ALJ was permitted to reject these limitations by finding that Plaintiff's complaint of needing naps was not supported by substantial evidence.  R. at 58.  In explaining his reasons for rejecting this limitation, the ALJ noted: "If claimant is suffering medication side effects such as extreme fatigue resulting [in] frequent prolonged daily naps, they were not related to or documented by claimant's treating physicians, including her

primary care provider[s], Drs. Sunday [and] Vegari." Id. at 33.  Because the ALJ reasonably found that the record did not support an additional limitation for Plaintiff's alleged need for naps, he did not err in failing to include it in his RFC assessment.

### 3.   The ALJ Did Not Err in Evaluating Phelps's Claim of Mental Impairment

Finally, Phelps contends that the ALJ did not include any non-exertional limitations in making his RFC assessment to account for her mental impairments.  Notably, Phelps's submission to this Court is completely silent as to what those mental impairments were or what medical evidence existed in the record to support them.  Pl.'s Br. at 6.  She merely argues that failing to account for them resulted in reversible error.  Id.  Phelps is incorrect.

In determining Phelps's RFC, the ALJ found that in addition to not being able to carry more than 10 pounds occasionally, stand/walk for more than two hours, and sit about six hours per eight-hour workday, "[Phelps] has further non-exertional limitations that preclude work involving detailed or complex instructions."  R. at 33.  The ALJ included this limitation in the hypothetical question posed to the VE when making his RFC assessment.  Id. at 57.  Additionally, he accounted for this limitation by explaining that, although Phelps "has never been evaluated or diagnosed by a mental health specialist; she has never had emergent, inpatient or partial hospitalization, or participated in formal outpatient therapy" and "[b]oth Drs. Vegari and Sunday record normal mental status, intact memory, euthymic mood and normal affect," Phelps should be given "the benefit of the doubt with regard to non-exertional limitations in view of her subjective complaints and conservative treatment of her primary care provider" by being precluded from "work involving detailed or complex instructions."  Id. at 33.  Here, the ALJ's determination that Phelps be limited to simple, routine tasks that did not involve detailed or complex instructions adequately accounted for Phelps's subjective complaints related to her

16

mental impairments.  See Chandler, 667 F.3d at 363 ("Although any statements of the individual concerning his or her symptoms must be carefully considered . . . the ALJ is not required to credit them[.]") (internal citations omitted).  Consequently, I find that the ALJ did not err in evaluating Phelps's claim of mental impairment.

## VI.     CONCLUSION

For all of the foregoing reasons, I find that the ALJ's decision was supported by substantial evidence and make the following:

### RECOMMENDATION

AND NOW, this 30th day of November, 2015, IT IS RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be DENIED.  Plaintiff may file objections to this Report and Recommendation within 14 days after receiving a copy thereof. See Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE

17